UNCLE NEAREST, INC.

     Appellant,

                                    **Case No. 3:26-cv-00135-CEA-DCP**

v.

                                    **On Appeal from Case No.
3:26-bk-30470-SHB**

PHILLIP G. YOUNG, JR., in his capacity
as Receiver, et al.

     Appellees.

## EMERGENCY MOTION TO EXPEDITE APPEAL PURSUANT TO F.R.B.P. 8013(B), AND IN THE ALTERNATIVE, FOR CERTIFICATION OF DIRECT APPEAL TO THE SIXTH CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

COMES NOW THE APPELLANT, UNCLE NEAREST, INC., by and though undersigned counsel of record, who respectfully moves this Court to expedite consideration of this appeal pursuant to F.R.B.P. 8013(b). The appellant avers that good cause exists for this request (as required by FRAP rule 2) based upon the information stated below:

<u>Preliminary Statement</u>

The debtor Uncle Nearest, Inc., through its founder, controlling shareholder and resolution of the Board of Directors seeks to have the current appeal expedited pursuant to F.R.B.P. 8013(b) due to the time sensitive nature of this appeal. It has sought Chapter 11 bankruptcy protection to stem the tide of damage being caused to the company by the acts of a receiver appointed in the underlying district court case (See *Farm Credit Mid-America Inc. v. Uncle Nearest, Et al.* Case No. 4:25-cv-00038-CEA-CHS). In that case, the Debtor's representatives have filed a motion for reconsideration of the August 22, 2025 Order appointing Phillip G. Young, Jr., citing a litany of

1

false statements made by the creditor, Farm Credit Mid America PCA in procuring this appointment.

While this motion has been pending, the Appellant has unfortunately discovered yet more acts of harm which if not corrected will cause irreparable harm to the brand of Uncle Nearest, Inc. As a result, it seeks this expedited appeal to resolve the question of the authority to file the Chapter 11 case.

<u>Background</u>

The litigation between Uncle Nearest, Inc. and its lienholder, Farm Credit Mid America, PCA (hereinafter referred to as "Farm Credit") has its inception in a district court matter before this court, wherein Farm Credit sued for default on loans outstanding with Uncle Nearest, Inc.[1] Almost immediately when that litigation was filed, Farm Credit filed a motion to appoint receiver over all of the Appellant's collateral. This motion was ultimately granted on August 22, 2025, before any discovery had been obtained.[2]

Paragraphs 2 and 3 of the 8/22/2026 order explain that the assets to be protected by this receiver are solely those which form the collateral to the primary creditor's loans:

2. The Receivership Assets: The "Assets" include (i) all of Uncle Nearest's assets, including proceeds, wherever located, including but not limited to, all of Uncle Nearest's: (a) right, title and interest in any property, real and personal, tangible and intangible, of whatever kind and description, wherever situated, including, without limitation, the Nearest Green Distillery Real Property, property leased or occupied by Uncle Nearest, all rents, litigation claims, accounts receivable, computers, all media on which information is stored electronically, vehicles, equipment, inventory, furniture, furnishings, licenses, permits, books, records, documents and intellectual property; (b) rights (including rights to payment and distributions), title, and interest, whether now owned or hereafter acquired in, under and to any entity (including, but not limited to, Domaine D'Anatole, Inc., Domaine D'Anatole, S.A.S, UNAH, Inc., S1 Organic Vodka, LLC, UN House MV, LLC, Uncle Nearest Ventures, LLC, and the Nearest Green Historical Preservation & Culture Fund, including any rights of control, ownership, distribution, and participation (collectively, the "Subject Entities")); (c)

---

[1] *See* Case No. 4:25-cv-00038-CEA-CHS, *Farm Credit Mid-America, PCA v. Uncle Nearest, Inc. et al*
[2] See ECF No. 39, Order Appointing Receiver.

cash and any bank and brokerage accounts; (d) any other property in which the Lender is granted a security interest pursuant to the Security Agreement and/or UCC-1 financing statements recorded against Uncle Nearest in favor of the Lender; and (e) claims and causes of action of any type, whether in equity or in kind, in contract or pursuant to a promissory note or any other enforceable agreement, in litigation, via settlement, or pursuant to any form of insurance policy or coverage (collectively, "Causes of Action"); and (ii) the Eady Road Property, in each case, including proceeds therefrom.

3. All the Assets are hereby deemed assets of the receivership (collectively, the "Receivership Assets"). **For the avoidance of doubt, the Receivership Assets include all Collateral as described in the Loan Documents**.

(emphasis added). In other words, this receivership exists for the stated purpose of protecting the position of one creditor, Farm Credit.

However, almost immediately, it became clear to the Appellant that the receiver's primary goal was to acquire and sell assets of the Debtor to protect its collateral, without regard to the effect such a strategy had on the brand and operations of the business. The Receiver's own filings and testimony confirm that his actions reflect a structured effort to liquidate Company assets, including the filing of an expedited motion to sell the Martha's Vineyard property,[3] and the initiation of a broader sale process that, as reflected in his Second Quarterly Report filed in the underlying receivership proceeding, generated offers that failed to satisfy even the secured creditor's debt,[4] an outcome shown in testimony given during the February 9, 2026 hearing in that proceeding to result from the disjointed and rushed process he employed.[5]

Simultaneously, the Appellant has filed in that case a motion to reconsider which has outlined the harms being caused to the company by the receiver. These include the following:

1. Neilsen data, which is summarized on the chart attached as Exhibit 1, shows a steep decline in retail sales volume by the Company that begins almost immediately at the start of the Receivership and has continued to decline at a substantial rate. In total, since August 2025,

---

[3] See ECF No. 147, *Expedited Motion to Sell Real and Personal Property in Martha's Vineyard*
[4] Second Quarterly Report at 6–7
[5] Hr'g Tr. Feb. 9, 2026 at 200–202.

3

(the date of the appointment of Phillip Young Jr. as receiver) to the present date, there has been a 46.7 percentage point decline in the performance of the Uncle Nearest brand.

2.  Farm Credit's unclean hands which should have prevented the appointment of a receiver by their misrepresentations against Fawn and Keith Weaver regarding the purpose of the purchase of the Martha's Vineyard property Doc.91, page ID 2821 Dist. Ct. record

3.  Instead of being committed to preserving enterprise value and ongoing operations, the Receiver has pursued a liquidation-focused strategy, including filing an expedited motion to sell the Martha's Vineyard property and initiating a broader sale process that generated offers insufficient to satisfy even the secured creditor's debt. As established during the February 9, 2026 hearing, those results were not reflective of the Company's value, but the product of a disjointed and accelerated process in which the Receiver admitted no business plan had been developed to support or maximize value.

4.  After Appointment Farm Credit has executed a "forbearance agreement" referenced in Paragraph 11 of the receiver's first quarterly report (Dist. Ct. Docket No. 46 ) with unknown terms and without court approval.

5.  Failed to make necessary marketing expenditures.

This motion for reconsideration is pending before this Court in the underlying case. (See Declaration of Fawn Weaver. Ex.6 ).

However, during the course of this appeal, the Appellant has cataloged even more failures of this receivership which demand that this matter be expedited to prevent further harm. Some of these acts which form the basis for cause for this request for expedited relief are as follows:

1.  The Receiver has failed to take any action against the former CFO to recover funds, despite evidence that the former CFO admitted to conduct including the fabrication of financial records, unauthorized use of signatures, and the diversion of millions of dollars of Company-related funds for personal use, as documented in the Company's third-party independent investigation;

2.  The Receiver has failed to pay a vital operational creditor (Advanced Spirits) on time during its control of the Appellant's operations, causing a default in the amount of $45,000,000.00;

3.  The Receiver has failed to pay a policy premium for a D&O policy, costing the company coverage which has a face value over $3,000,000.00; and

4.  The Receiver has failed to make payments to an extensive list of unsecured creditors on Schedule F of the Bankruptcy Petition during the course of the receivership since August

4

2025, while simultaneously charging the Appellant's estate millions in administrative fees, currently averaging approximately $553,000.00 per month.

As a result of these and other failures by the Receiver, the Debtor's controlling shareholder and Board of Directors decided to take action to protect the brand and viability of the company, by authorizing the filing of the Chapter 11 petition in order to preserve the best interests of the Debtor and all of the creditors, not just Farm Credit.[7]

Predictably, the lender and receiver opposed this petition, filing a motion to dismiss before the Bankruptcy Court alleging that the receivership granted the receiver the sole authority to file the petition. In a ruling that lacked legal support, the Bankruptcy Court then dismissed this case, prompting this appeal.[8] These acts show that there is an immediate issue that must be addressed. Put plainly, this receiver has established beyond any dispute that his record of making false claims and failing to address the day-to-day operations shows a shocking lack of good faith and competence in running a company such as Uncle Nearest, Inc. Specifically, the precipitous drop in market retail sales and tourism traffic and sales at its distillery can be laid squarely at the feet of the receiver. (See Declaration of Fawn Weaver, Ex. 6)

In the face of these acts, he has now acted in this case to stop the Chapter 11 filing, claiming he has exclusive authority. The receiver only seeks to do one thing in this case: sell assets of Uncle Nearest, Inc., all while charging millions of dollars in fees.

As a result, the debtor needs an expedited appeal in this case, as the acts of the Receiver are ongoing and preventing an orderly reorganization of the Debtor through its Chapter 11 petition.

In support of the allegations in the motion to expedite the appeal the Appellant Uncle Nearest, Inc. relies upon the following documents:

---

[7] See ECF No. 1, Bankruptcy Case No. 3:26-bk-30470-SHB In Re: Uncle Nearest, Inc., 3/17/2026.
[8] The bankruptcy court then entered a supplemental opinion, which was entered after the notice of appeal was filed. The Debtor does not concede the authority of that Court to enter such a post-appeal supplemental opinion.

5

1) Ex. 1. Summary of Nielsen Data;

2) Ex. 2 Receiver's Expedited Motion to Dismiss Bankruptcy Cases;

3) Ex. 3 Order Dismissing Bankruptcy cases 3/19/2026;

4) Ex. 4 Second Amended Notice of Appeal;

5) Ex. 5 Amended Statement of Issues on Appeal;

6) Ex. 6 Declaration of Fawn Weaver;

7) Ex. 7 Traveler's D& O Policy;

8) Ex. 8 Order Appointing Receiver;

9) Ex. 9 Corporate Authorization to File Chapter 11; and

10) Ex. 10 Declaration of compliance with Rule 8013.

**The relief sought by the Appellant here is as follows: Uncle Nearest, Inc., and its related entities ask that this Court adopt an expedited briefing schedule, requiring that the Court set the time for the simultaneous submission of the Appellant's and Appellee's briefs within seven (7) days of receipt of record, resolve this appeal on the briefs without oral argument on an expedited basis, and, to the extent practicable, issue a decision within fourteen (14) days of the completion of briefing.**

This requested schedule is appropriate and proportional given that the Appellees sought and obtained an expedited hearing on their motion to dismiss within hours of the petition being filed, and the Bankruptcy Court issued its ruling from the bench within 24 hours without the development of an evidentiary record.

## II.     LEGAL STANDARD

<u>Basis for the Request to Expedite the Appeal pursuant to F.R.B.P. 8013</u>

Federal Rule of Bankruptcy procedure 8013(b)provides as follows:

(B) *Motion to Expedite an Appeal*. A motion to expedite an appeal must explain what justifies considering the appeal ahead of other matters. The motion may be filed as an emergency motion under (d). If it is granted, the district court or BAP may accelerate the time to:

(i) send the record;

(ii) file briefs and other documents;

(iii) conduct oral argument; and

(iv) resolve the appeal.

Fed. R. Bankr. P. 8013(a)(2)(B) explains that a motion to expedite an appeal must include an explanation as to "what justifies considering the appeal ahead of other matters." Similarly, 28 USCS § 1657(a) states that "the court shall expedite the consideration of any action [...] if good cause therefore is shown." Pursuant to this statute, "'good cause' is shown if a right under the Constitution of the United States or a Federal Statute [...] would be maintained in a factual context that indicates that a request for expedited consideration has merit." 28 USCS § 1657(a).

*In re Bechard*, CIVIL NO. 19-2025 (RAM) (D. P.R. Nov. 27, 2019), 5

Good cause exists for this application, due to the various acts committed by the Receiver as outlined herein, and the irreparable harm being caused to the Debtor by the dismissal of the Chapter 11 Bankruptcy petition.

**1.** <u>**The appeal should be expedited because the "Good Cause" exists for the relief requested in this motion.**</u>

As stated above, 28 USCS § 1657(a) states that "the court shall expedite the consideration of any action [...] if good cause therefore is shown.". Pursuant to this statute, "'good cause' is shown if a right under the Constitution of the United States or a Federal Statute [...] would be maintained in a factual context that indicates that a request for expedited consideration has merit." 28 USCS § 1657(a). In re Bechard, CIVIL NO. 19-2025 (RAM) (D. P.R. Nov 27, 2019), 5. Here, the Bankruptcy Court's ruling directly contravenes controlling Sixth Circuit Authority and presents a question of law of exceptional importance: whether a receivership can lawfully deprive a Debtor of its right to relief under the Bankruptcy Act.

**A. Existing Caselaw demonstrates that the Bankruptcy Court's Order Dismissing the Chapter 11 Petition deprives the Debtor of their Constitutional and Statutory Right to Bankruptcy Relief, and is good cause to expedite the appeal.**

For more than a century, the Sixth Circuit has articulated a consistent, unequivocal rule: the existence of a receivership does not deprive a debtor of the right to seek relief under federal bankruptcy law. Yet, the Bankruptcy Court's order deprives Uncle Nearest, Inc. of that right to relief, as it claimed that this Court's order in the District Court case entered on August 22, 2025, did exactly that by vesting the right to bankruptcy relief exclusively in the possession of the Receiver.

However, the principle that such an outcome is fundamentally flawed has been stated repeatedly in cases in this Circuit. For example, as the Sixth Circuit explained in *In re Yaryan Naval Stores Co.*:

> The language of the Bankruptcy Act is so broad and comprehensive as to be all-embracing and all-inclusive. Rights and privileges so positively bestowed cannot be destroyed, denied, or abridged by any power save that which created and brought them into being. The jurisdiction of the courts in bankruptcy… is exclusive and paramount.

See *In re Yaryan Naval Stores Co.*, 214 F. 563, 565 (6th Cir. 1914).

In another case, the Sixth Circuit reaffirmed that the right to bankruptcy relief cannot be displaced by state court proceedings or receivership orders. In *Struthers Furnace Co. v. Grant*, the court held:

> The mere existence of an equity receivership does not preclude directors from assisting others in procuring an adjudication in involuntary bankruptcy… And the pendency of a receivership does not ordinarily prevent the filing of a voluntary petition.

See *Struthers Furnace Co. v. Grant*, 30 F.2d 576, 577 (6th Cir. 1929).

In a third case, *Muffler v. Petticrew Real Estate Co.*, the court reiterated this rule:

8

> The bankrupt was not deprived of the right to file its petition merely
> because its property was in the custody of the state court receiver.

See *Muffler v. Petticrew Real Estate Co.*, 132 F.2d 479, 481 (6th Cir. 1942).

This principle is not limited to state court receiverships. The Sixth Circuit's rule applies regardless of whether the receiver is appointed by a state or federal court. See *In re Yaryan Naval Stores Co.*, 214 F. 563, 565 (6th Cir. 1914) (recognizing debtor's "undeniable right" to seek bankruptcy relief notwithstanding a federal receivership); *Struthers Furnace Co. v. Grant*, 30 F.2d 576, 577 (6th Cir. 1929); *Merritt v. Mt. Forest Fur Farms of Am.*, 103 F.2d 69, 71–72 (6th Cir. 1939); *Muffler v. Petticrew Real Estate Co.*, 132 F.2d 479, 481 (6th Cir. 1942). The dispositive inquiry is whether a receivership—of any kind—may be used to displace access to federal bankruptcy relief. Controlling authority makes clear that it may not.

And where courts have attempted to restrict access to bankruptcy relief, the Sixth Circuit has not hesitated to condemn such efforts. In *Merritt v. Mt. Forest Fur Farms of America*, the court held:

> This restraining order was erroneously entered. It denied to the appellee…
> access to the federal courts, thus depriving them of their constitutional
> right to relief under the Bankruptcy Act.

*Merritt v. Mt. Forest Fur Farms of Am.*, 103 F.2d 69, 71–72 (6th Cir. 1939).

These decisions establish a clear and controlling rule: the right to seek bankruptcy relief is grounded in federal law, is exclusive in nature, and cannot be curtailed by the appointment of a receiver or by orders entered in ancillary proceedings. The Bankruptcy Court ruling is in opposition to the cited precedent in this circuit and seeks to upend over 100 years of precedent which has been followed in this Circuit. The result of this flawed ruling dismissing the bankruptcy case of the Appellant, has deprived it of its right to relief before the bankruptcy court, and consequently forms the basis for good cause to expedite this appeal.

9

### 2.  <u>The Debtor will Suffer Irreparable Harm</u>

The Debtor has submitted the Declaration of Fawn Weaver, which outlines the irreparable harm being caused to it due to the actions of the receiver, and consequently the dismissal of the Chapter 11 petition.

The Company is suffering irreparable harm, as it cannot pursue its claims against the former CFO in the absence of the Chapter 11 petition, due to the refusal of the receiver to act.

The company is suffering operational harm, primarily in retail sales losses, while the receiver is allowed to remain in control of operations, which would be halted by the Chapter 11 filing.  According to the Nielsen data, the debtor has suffered a massive loss of sales under the Receiver, which has documented a 46.7 percentage point drop in sales according to Nielsen from January 2025 to the present. (See Exhibit 1).

The Debtor will be irreparably harmed by the loss of the Martha's Vineyard property which the Chapter 11 petition and the resulting automatic stay would prevent.

The receiver has misstated the Appellant's cashflow and stated in a quarterly report that a hearing of the motion to reconsider to claim that the company was in "financial shambles" and "unable to make payroll". These statements are false and are causing continual harm to the brand of the Appellant. See Declaration of Fawn Weaver, paragraph. 40-42.

Under the stewardship of the Receiver, accounts payable of Uncle Nearest, Inc. have increased from approximately $10,000,000.00 to $13,886,897.00.  See Declaration of Fawn Weaver, paragraph 46 and 52.

Additionally, while Uncle Nearest Inc. has been under the control of Receiver, a $45 million demand was made under the Advanced Spirits forward purchase arrangement.  See

10

Declaration of Fawn Weaver, paragraph 53. No such demand existed before the Receiver assumed control of the Appellant's operations.

Prior to the entry of the receivership order, the Appellant had a Directors and Officers liability policy with a face value of $3,000,000.00. The policy has been allowed to lapse by the receiver. See Exhibit 7.

In sum, the Appellant had already outlined the deficiencies of the Receiver in the motion to reconsider the underlying case. However, these deficiencies have not ceased. The Appellant is suffering additional harms which indicate that this litigation must be brought to swift conclusion to prevent the harms being suffered. The retail sales loss, the default on the forward purchase agreement, and the lapse of the Appellant's D&O policy are stark examples of the harm being caused on an ongoing basis to the company. This certainly constitutes irreparable harm sufficient to expedite this appeal and end the denial of the Debtor's right to bankruptcy relief.

### The Motion filed is in Compliance with Rule 8013 (d)

The Appellant has complied with Rule 8013(d) by the following:

(1) *Noting the Emergency*. – The Appellant has inserted "Emergency" before the motion's title.

(2) *Content*. (A) an affidavit/declaration of Fawn Weaver ( previously referenced as Ex. 6) setting forth the nature of the emergency has been attached to this motion;  (B) cause for this motion were submitted to the bankruptcy court in briefs submitted before the Court's ruling dismissing the bankruptcy case, therefore there is no basis for a remand of this request;  (C) (i) the email address, office address, and telephone number of Curtis D. Johnson Jr., and the firm of Johnson and Johnson PC has been included in the signature block of this filing; and  (ii) the email address, office address and telephone number of opposing counsel and any unrepresented party to

11

the appeal are included in the certificate of service. Finally, this emergency motion is being served pursuant to Rule 8011 as required.

(3) *Notifying Opposing Parties*. Counsel hereby certifies that every practicable effort has been made to notify opposing counsel and any unrepresented party in time for them to respond. A declaration outlining those efforts has been attached stating when and how notice was given of the motion.

### 3. In the Alternative, the Appellant requests Certification for Direct Appeal

Appellate certification is appropriate where a case presents (i) a question of law involving the application of controlling authority to a novel set of circumstances, (ii) a matter of public importance, or (iii) a circumstance in which an immediate appeal may materially advance the progress of the case. 28 U.S.C. § 158(d)(2)(A).

To the extent the Court determines that appellate guidance would assist in resolving the controlling legal issues presented, certification may be appropriate where a lower court's ruling departs from controlling authority and presents a pure question of law.

If this Court does not deem an expedited appeal appropriate, the Appellant asks that this matter be certified pursuant to 28 U.S.C. § 158(d)(2)(A) for a direct appeal.

### 4. RELIEF REQUESTED

For the foregoing reasons, Appellant respectfully requests that this Court expedite consideration of this appeal.

The debtor requests the following relief:

That the Court set the deadline for the simultaneous filing of the Appellant's and Appellee's briefs within 7 days of receipt of the record; and

That the Court resolve this appeal on the briefs without oral argument on an expedited basis; and

That, to the extent practicable, the Court issue a decision within 14 days of the completion of briefing.

In the alternative, to the extent the Court determines that appellate guidance would assist in resolving the controlling legal issues presented, Appellant further requests that the Court certify this matter for direct appeal to the United States Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 158(d)(2).

Respectfully submitted,

**JOHNSON & JOHNSON, P.C.**

*/s/ Curtis Johnson*

Curtis Johnson (TN BPR No. 015518)
Florence Johnson (TN BPR No. 015499)
1407 Union Avenue, Suite 1002
Memphis, TN 38104
T: (901) 725-7520
cjohnson@johnsonandjohnsonattys.com
fjohnson@johnsonandjohnsonattys.com

*Counsel for Appellant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 27, 2026, a copy of the foregoing was served via this Court's CM/ECF system on all parties consenting to receive electronic service.

Erika R Barnes
Stites & Harbison, PLLC (Nashville)
SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219-2449
615-782-2252
615-742-0734 (fax)
ebarnes@stites.com

13

Justin Timothy Campbell
Thompson Burton PLLC
6100 Tower Circle
Suite 200
Franklin, TN 37067
615-465-6015
justin@thompsonburton.com

Demetra Liggins
McGuire Woods, LLP (TX)
Texas Tower
845 Texas Avenue
Suite 2400
Houston, TX 77002
713-353-6661
dliggins@mcguirewoods.com

Mary Alexandra Shipley
McGuireWoods LLP
Restructuring & Insolvency
77 W. Wacker Drive
Suite 4100
Chicago, IL 60601
312-849-9253
415-844-8922 (fax)
ashipley@mcguirewoods.com

Dairanetta S Spain
McGuire Woods, LLP (TX)
Texas Tower
845 Texas Avenue
Suite 2400
Houston, TX 77002
dspain@mcquirewoods.com

*/s/ Curtis Johnson*
Curtis Johnson

14