UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

IN RE:                              :        Case No. 3:26-bk-30470-SHB

UNCLE NEAREST, INC.,                :        Chapter 11

     Debtor.                        :        Knoxville, Tennessee
                                             March 19, 2026
                                    :        10:11 a.m.

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :


                    TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE SUZANNE H. BAUKNIGHT,
            CHIEF UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:                Tarpy Cox
                               BY:  THOMAS L. TARPY, ESQ.
                                    KELLI D. HOLMES, ESQ.
                               1111 N. Northshore Dr., #N-290
                               Knoxville, TN  37919

For Phillip G. Young, Jr.:     Thompson Burton PLLC
                               By:  JUSTIN T. CAMPBELL, ESQ.
                               1801 West End Avenue, Suite 1550
                               Nashville, TN  37203


Audio Operator:                TRACEE FORD


Transcript prepared by:        JANICE RUSSELL TRANSCRIPTS
                               1418 Red Fox Circle
                               Severance, Colorado  80550
                               (757) 422-9089
                               trussell31@tdsmail.com


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

APPEARANCES (continued):

For Farm Credit Mid-America,   Stites & Harbison, PLLC
PCA:                           By:  ERIKA R. BARNES, ESQ.
                               401 Commerce Street, Suite 800
                               Nashville, TN  37219

                               McGuireWoods, LLP
                               By:  DEMETRA LIGGINS, ESQ.
                               845 Texas Avenue, Suite 2400
                               Houston, TX  77002

For United States Trustee:     Office of United States Trustee
                               BY:  TIFFANY DIIORIO, ESQ.
                               800 Market Street, Suite 114
                               Knoxville, TN  37902

P R O C E E D I N G S

(Bracketed text indicates insertions as directed by the Court)

THE COURT: All right. Next on our docket are three new cases and a multitude of first day motions. I'll call, I'll go ahead and call them all and then I'll take appearances. And what I'm going to want is to address the two motions to dismiss first.

So Uncle Nearest, Inc. is 26-30470; Nearest Green Distillery, Inc. is 26-30471; Uncle Nearest Real Estate Holdings, LLC is 26-30472. And while I do have, including on the docket here today, a motion for administrative consolidation of those, they're not yet administratively consolidated. And so let me just call all the matters that are pending for today's hearing while everybody takes their seats.

In Uncle Nearest, Inc., we have a motion by Uncle Near -- by the -- by -- in all three cases, we have a motion by all three debtors for an order that would direct the joint administration of the case; a motion in all three to appoint or employ Kenneth Welt as a chief restructuring officer; an expedited motion by the receiver, Phillip Young, for dismissal or to recognize the receiver as an authorized representative of the debtors. I think there's also -- yes -- the motion by the debtor for authority to pay pre-petition wages; a motion by Farm Credit Mid-America, PCA to dismiss the cases or to appoint

Mr. Young as a chapter 11 trustee; a motion by the debtor for interim authority to use cash collateral; motion by the debtor to expedite the hearing on the motion for prepetition wages; a motion by Farm Credit Mid-America to expedite the hearing on its motion; a motion by the debtor to expedite hearing on its motion to use cash collateral; and a motion by debtor to expedite the hearing on the motion to employ.

I will grant all four of the motions to expedite the hearings as they apply in each of the cases.

So let me start, then, by taking appearances. I will note Ms. Holmes is here, as is Mr. Tarpy for all three debtors.

And let me take appearances over here on the other side of the table

MR. CAMPBELL: From the, from the podium or the table, your Honor?

THE COURT: For, just for this, from the table's fine. Thank you for asking.

MR. CAMPBELL: Justin Campbell here on behalf of the receiver, Phillip G. Young.

THE COURT: Good morning to both of you.

MS. BARNES: Good morning, your Honor. Erica Barnes for Farm Credit Mid-America, PCA, along with Demetra Liggins of McGuireWoods.

As a preliminary matter, your Honor, we do have a pending *pro hac vice* motion for Ms. Liggins and would ask

permission for her to argue this morning.

THE COURT: I will grant that, yes.

MS. BARNES: Thank you, your Honor.

MS. LIGGINS: Thank you.

THE COURT: Ms. DiIorio is here for the U. S. Trustee.

Who else? Anyone else want to make an appearance?

(No response)

THE COURT: All right. And bear with me just one moment, please.

(Pause)

THE COURT: All right. I have read all of the motions with, with regard to the request for dismissal and as well as the debtor's opposition. I've done extensive research already and I will hear argument. But I want to also ask, with regard -- and this really is a question probably directed best to debtor's counsel -- with regard to the question of authority, is there any dispute of fact or is it just a matter of construing the receivership order and applying the law?

MS. HOLMES: Your Honor, there's, there's no dispute of fact that the receivership order is in place and that it says what it says. It is simply a matter of ensuring what the language of that receivership order says and how the applicable law interprets and ultimately results in the outcome that will be had here today.

THE COURT: Okay. Thank you. That's helpful to frame

this.

So Mr. Campbell, if you want to go ahead and come up.

(Mr. Campbell complies)

THE COURT: What I want to hear is argument and if you think there are any facts that are disputed that I should hear. It strikes me that there are none, but I'm happy to hear if you think -- 'cause I'm prepared to rule today after I hear this argument, unless there's an issue of fact.

MR. CAMPBELL: Thank you, your Honor. Again, Justin Campbell on behalf of the receiver, Phillip Young.

As a preliminary matter, we don't think there's any significant facts at dispute. We think this is strictly just a legal argument. And I'm going to make my presentation to the Court pretty brief because, as the Court said, you've already read everything. You, you've done your extensive research. So there's just a few things that I want to highlight for the Court as you're, as you're making your, your ruling.

Again, thank you for hearing it. I know this has been a flurry, so I appreciate the Court's time, giving us some time and on a couple days' notice.

Your honor, this is a Hail Mary by Ms. Weaver to try to get an end around around Judge Atchley's receivership order. We were here five weeks ago upstairs in front of Judge Atchley for a seven-hour hearing on whether or not to remove the receiver or, well, reconsider the receivership order and a

motion to extend the receivership to, to other entities. We, we believe that the, that Judge Atchley was, understood our argument, and we think this is another end around just to get around that. Judge Atchley is still ruling. We've got, we had some post brief, post-hearing briefing to do. And so Judge Atchley, I think, is still working on his briefing.

But that's all this is, your Honor. It's forum shopping. It's an attempt to step around the receivership. Mr. Young was appointed receiver in, in August of 20, August 22 of '25, last year. And in that receivership order, the most important, one of the most important sections of that receivership order is that it says -- and it's paragraph 9 of the receivership order which we've attached the motion -- it grants the receiver the exclusive right to "all the powers of the officers, directors, members, and managers of Uncle Nearest and subject entities to take, to take his actions as necessary on behalf of Uncle Nearest and subject entities each of Uncle Nearest and the subject entities' rights and powers to act on behalf of other entities, including, without limitation, each subject entity to direct such other entity to take or refrain from taking any action in furtherance of the terms of this order."

The receivership order then goes on to give Mr. Young the authority to file bankruptcy. And you're going to hear argument likely today surrounding the 530 case, the 530

Donelson case of, of Judge Mashburn. And Mr. Young has authority. He doesn't have -- the, the language exclusive is not in the bankruptcy provision. But if you take that paragraph with paragraph 9 from Judge Atchley's order, no one else can sign the petition. No one else has the authority to even push this, this case, these companies, into a bankruptcy. It's just the receiver. It specifically sets out in the receivership order in paragraph 10(b) what Mr. and Mrs. Weaver's roles will be for the court. It says, "For the avoidance of any doubt, this means Fawn and Keith Weaver may continue to market Uncle Nearest's products and manage the Uncle Nearest brand, subject to the receiver's supervision." It's reducing the role of Ms. Weaver to marketing the company under the receivership's position, under the receivership supervision. And if there was any ambiguity as to how Judge Atchley wanted this, this order interpreted, in December of last year, Judge Atchley put down an order striking a response that Mr. and Mrs. Weaver had filed on behalf, attempted to file on behalf of the entities and a notice of appearance that was attempted to be filed on behalf of the entities. Judge Atchley again said the receiver is the only party that can, can represent the companies here, doubling down on what was already in the receivership order.

So at its core, your Honor, Ms. Weaver can't open a bank account for the company. She can't sign a check for the

company. She can't file a tax return for the company. She can't sign a board resolution for the company. But now somehow, the debtors want you to believe that she has the authority to sign a petition under the federal Bankruptcy Code. I'll get into the -- I want to briefly touch on the bad faith piece.

As the Court knows, there's no bright-line rule for bad faith. We look at for cause.

THE COURT: Wouldn't I have to have an evidentiary hearing on bad faith?

MR. CAMPBELL: You would, yeah. Yeah. I mean, I think you can, you can look at what's been filed and take judicial notice of what's there, then impart those actions.

But practically, your Honor, I think the most important thing that I want to, to set with the Court is there's a big -- there's -- this company's in limbo because of the receivership order and the bankruptcy case. The receiver's getting calls from employees, from creditors. Who's in charge? We don't know. Who's, who do we take orders from? We don't know. If, if this goes forward and they don't get cash collateral, there's no payroll on Monday. They're not making payroll on Monday. And this thing's cratering.

And so without some guidance from the Court and the dismissal of these cases and putting the receivership back in place, putting the receiver back in place, this is going to

cause catastrophic damage to the companies, so.

THE COURT: Can I -- your alternative request that I declare that the receiver is the only authorized representative of the debtors, is that akin to a 543(d) request that the receiver, not as custodian, not be required to turn over operations to the debtors?

MR. CAMPBELL: Correct. Correct, your Honor.

THE COURT: Okay.

MR. CAMPBELL: Yeah. We would -- it would essentially, I mean, that's not the most practical or advantageous approach because we'd be scrambling to try to get this together. I think it's no secret that the receiver may ultimately need to file a bankruptcy at some point for these companies to, to run a potential sale through a 363 situation to cleanse it. But we're not there. We, we haven't, we haven't finalized a stalking horse. There's too many moving parts, too many variables at this point to try to shoehorn the receiver. Obviously, we're going to put that up. We're going to put that request in there as, as a backup.

But our -- our immediate -- our, our main request is that the Court dismiss the cases, so.

THE COURT: Thank you, Mr. Campbell.

MR. CAMPBELL: Thank you.

THE COURT: Before I give the debtors an oppor, debtor's counsel an opportunity to respond, let's go ahead and,

and bring up Ms. Liggins to argue the motion that was filed late yesterday on behalf of Farm Credit Mid-America.

MS. LIGGINS: Thank you, your Honor. Demetra Liggins on behalf of Farm Credit.

I want to say at the outset we also do not believe there's anything, factual issues present this morning. This is just a matter of interpreting an order that has already been entered by Judge Atchley in the district court and what that order allows for Ms. Weaver, Fawn Weaver, to do.

I also don't want to rehash what Mr. Campbell said, as we do agree with the argument about, you know, who has authority. The receivership order did not just divest Uncle Nearest with the ability to go into bankruptcy. The order is just clear about who can put Uncle Nearest into bankruptcy. And we believe that only the receiver has that ability. We are the party that sought the receiver back in August, but Mr. Young was the choice of the debtors.

THE COURT: I saw the footnote.

MS. LIGGINS: And to date, there's been no allegations that he has operated or managed the prop, or, or managed the company improperly. Instead, what we have had are many iterations of wanting a do-over. And I think that this is the latest do-over. We had a receiver put in place. Then we had a motion for reconsideration. We had a, like he said, a seven-hour hearing on the reconsideration. We were waiting for a

ruling. And in, in the midst of this, we have this. Our position is there is only one person who can file the case. That's Phillip Young. All of that authority lies with him.

Our position is, also, if the Court should disagree this debtor, these debtors should not be in possession, then there should be a Chapter 11 trustee. That trustee should be Phillip Young. To appoint anyone else as a fiduciary of these companies would cause disruption. We're in the middle, or the receiver's in the middle of a sale process. It will confuse the buyers. It will set us back months. We will lose all types of money and time and resources.

There is also no dispute that we are the first lienholder. We have a lien on substantially all of the assets. So all operations and first day motions, they will require use of cash collateral and that, we have a lien on cash collateral and we have not consented to the use of cash collateral. We have not even been contacted about if we would even provide any consent or any terms.

So we think that this is a misuse of judicial resources. We think that it is violent, that it violates the district court order. There are guardrails under the Bankruptcy Code for this purpose. You will note, your Honor, there were no resolutions attached to the petition. I think one of the reasons you'll see that there were no resolutions is they don't have the ability to sign any resolutions because all

of that authority belongs to Mr. Young.

We know that there is a big dispute between Farm Credit and these companies. That is undisputed. The litigation is hard fought. It is longstanding. It is expensive. What we are looking for is to put some finality to that so that Mr. Young can do his job and we can actually move forward with a reorganization strategy under the receivership.

THE COURT: All right. Thank you.

MS. LIGGINS: Thank you.

THE COURT: Does the U. S. Trustee have any position that you'd want to state before the debtor's counsel?

MS. DIIORIO: With regards to the --

THE COURT: It's hard to stand up there.

MS. DIIORIO: Sorry, your Honor.

With regards to the authority, the U. S. Trustee takes no position.

THE COURT: All right. Thank you.

All right. Ms. Holmes.

MS. HOLMES: Good morning, your Honor.

THE COURT: Good morning.

MS. HOLMES: This motion turns on a single issue, whether the receivership order express, expressly divested the debtors of authority to file bankruptcy. Of course, it's the debtor's position that it did not. Under In re 530 Donelson, the rule is clear. Appointment of a receiver does not

eliminate a debtor's authority to file bankruptcy unless the order expressly says so.  The order here does not prohibit the debtors from filing, and it does not grant the receiver exclusive authority.  It simply authorizes the receiver to act.  Authorization is not exclusivity.  The receiver relies heavily on language granting him all powers of management, but that governs operational control, not the separate federal right to seek bankruptcy relief.  <u>Donelson</u> makes clear that if a court intends to divest that right, the order must do so clearly and unmistakably.

THE COURT:  But for the receivership, Ms. Holmes, who would have authority to put these debtors in bankruptcy?

MS. HOLMES:  Fawn Weaver, your Honor.

THE COURT:  By herself?

MS. HOLMES:  Well, the, the corporate board structure, they would sign off on it, but --

THE COURT:  Right.  In fact, the, the Tennessee Code makes clear that a corporation or an LLC, corporation acts through its, its board.  And the LLC acts through its either members or its board, depending upon how it's set up and how it's managed.  But here, she's acting alone, is she not?

MS. HOLMES:  She is acting alone, your Honor, but that is simply because of the nature of the receivership has prohibited her from doing --

THE COURT:  How so?

MS. HOLMES: -- anything other --

THE COURT: Why is that?

MS. HOLMES: Because she doesn't have the authority to do exactly what you're hinting at. But the corporate formalities are impacted by the receivership and a lack of --

THE COURT: And the corporate formalities by the receivership have been exclusively vested in the receiver, have they not?

MS. HOLMES: They have, which is separate from the federal right to file a bankruptcy, not --

THE COURT: Yes. And, and what about this receivership order precludes the debtor from filing bankruptcy?

MS. HOLMES: Your Honor, can you repeat your question?

THE COURT: What about the receivership order precludes the debtor from filing bankruptcy?

MS. HOLMES: You're saying in the case that it does?

THE COURT: No. I hear you --

MS. HOLMES: It --

THE COURT: -- say it does. Does it? It doesn't. In fact, the receiver has the authority -- the, the debtor is not divested. The debtors are not divested of authority to file the bankruptcy case. That authority is in the receiver.

MS. HOLMES: Your Honor, the exclusive authority to file a bankruptcy was not divested. The exclusive authority -- I, I do understand what you're saying, but --

THE COURT: But, but what I'm saying, what I'm asking you to acknowledge or not, and explain, if your answer is no, the receivership order does not preclude these debtors from being in bankruptcy, is that right?

MS. HOLMES: That's correct.

THE COURT: Okay. So then your argument and all these cases that talk about state court, by the way, receivership orders that don't leave an avenue for a debtor to be in bankruptcy, that's not applicable here, is it?

MS. HOLMES: Your Honor, well, it is. So the receivership order under Donelson must exclusively divest the authority from the corporate board to file a bankruptcy. That language is not present in the receivership order. It grants the receiver authority to file a bankruptcy, but not the exclusive authority. And Donelson makes clear that if a court intends to divest that right, it has to state that expressly. It didn't.

THE COURT: It did exclusively vest all corporate governance authority in the receiver, though, did it not?

MS. HOLMES: Yes, but even under Donelson, they, they view those things as, as separate matters. It was the same in, in Donelson.

THE COURT: Well, it wasn't exactly the same. It was a very -- I'll get to that eventually. But, but Judge Mashburn in Donelson noted that it was just a standard receivership,

state receivership order, without those kinds of express provisions. And it, it vested rights in the receiver, but it did not divest rights from the governing body in 530 Donelson.

MS. HOLMES: Well, then I think that leads us to a point that didn't have to be fleshed out in Donelson, which was the issue of preemption and I --

THE COURT: We've got a federal court here.

MS. HOLMES: I under --

THE COURT: Why are we preempted? It's federal law.

MS. HOLMES: That's rooted in state law. The receivership and all of his controls that he has been granted by the receivership order, they're all rooted in state law.

THE COURT: Okay. Well, if that's -- that's where I thought you were going, was preemption. But this receivership order doesn't say that the debtors may not file bankruptcy. It says that the receiver has the right to file a bankruptcy petition. So why, how is there any preemption? It's not as if you have a court of any sort, federal or state, that's saying you can't file bankruptcy. That's not what we have here.

MS. HOLMES: Well, to, to prohibit -- as, as the receiver stated, he's, he's planning on putting, according to his words, the, the case in a bankruptcy at some point. And we are here today -- the debtor -- any order to prohibit a bankruptcy filing would raise serious federal questions.

THE COURT: But it doesn't prohibit a bankruptcy

filing.

MS. HOLMES: By the, by the debtor and --

THE COURT: It doesn't prohibit a bankruptcy filing by the debtor. Show me, show me where.

MS. HOLMES: Your Honor --

THE COURT: It expressly authorizes a bankruptcy filing by the debtor under the authority of the receiver.

MS. HOLMES: Then I have to circle back to the fact that under Donelson that -- I'm, I'm going to parrot myself. If the corporate board is to be divested of their authority to file a bankruptcy, then in the bankruptcy section of the receivership order, it should have explicitly stated that.

THE COURT: I understand your argument,

MS. HOLMES: Your Honor, and on, on the same point, and then I'll move on from the authority section, but courts know how to remove officers, restructure governance, and expressly prohibit filings. And it, it did not do that here. I'll touch --

THE COURT: It didn't remove officers?

MS. HOLMES: Not to our knowledge, your Honor.

THE COURT: How about paragraph 9? Doesn't it expressly vest exclusively all of the powers in the receiver? Isn't that exactly what paragraph 9 does?

"The receiver shall be exclusively vested with (a) all

of the powers of officers, directors, members and/or

managers, as applicable, of Uncle Nearest and the subject entities to take or refrain from taking any and all actions on behalf of Uncle Nearest and the subject entities."

Isn't that replacing?  And don't, aren't there numerous cases that say when the receivership order replaces the officers, directors, etc., then the receiver has the authority, the full authority --

MS. HOLMES:  For operation --

THE COURT:  -- and the others don't?.

MS. HOLMES:  For operational control.  Yes, that's correct, your Honor.

THE COURT:  Okay.  Go ahead.

MS. HOLMES:  I'll touch briefly on the, the bad faith issue, even though the Court's already noted that that would have to be evidentiary.

On bad faith, the Sixth Circuit requires a totality of the circumstances analysis under Lacuna and Trident.  Those, those factors aren't present here.  Aside from there being a receivership order in place, these are operating businesses, not single-asset entities.  They're not newly created.  And it's not a two-party dispute.  Your Honor, the, the bankruptcy filing is not an attempt on the debtor's behalf to evade anything.  It was necessary to step, a necessary step to preserve the value and to stabilize operations.  In the exhibit

that we uploaded with our response to the motion to dismiss, you can see there's been a decline in the gross revenue of the business since the receivership has, has taken over. As the receiver stated, he's not prepared to move forward with the bankruptcy, but the debtor is. We've assembled a team and we have our chief restructuring officer and a team of accountants, forensic accountants, that are prepared to transparently operate this business under the laws of the federal Bankruptcy Code.

THE COURT: Thank you.

Mr. Campbell.

MR. CAMPBELL: Thank you, your Honor.

I was, I was prepared to get up here and help the Court see the differences between Judge Mashburn's ruling in 530 in the current situation, but I think the Court understands that. It's a great ruling. Judge Mashburn did a great job with the opinion, but it's just different than the facts we have here. So I, I won't belabor that point.

The only thing I wanted to point out to the Court is this argument about sales dropping. Judge Atchley heard that for seven hours. That's what we talked about for seven hours, was the sales dropping, the sales dropping. I would like to remind the Court that through the entire receivership, the receiver hasn't missed payroll. The receiver has stabilized the company. The receiver has settled down all of the stormy

waters that had occurred prior to the receivership.

So with that, your Honor, unless the Court has questions, that's all I have.

THE COURT: Ms. Liggins, anything further from you?

MS. LIGGINS: Nothing further, your Honor.

THE COURT: All right. So what we have is the receiver's grounds for the motion are:

No. 1, Ms. Weaver lacked authority to file the petition so that the court lacks subject matter jurisdiction;

No. 2, the petition was filed in bad faith; and

No. 3, alternatively, essentially, what we've fleshed out this morning is that the receiver would say under 543(d), if the case continues, he should not be or should be relieved from the requirement of 543(a) and (b).

Farm Credit Mid-America's grounds for dismissal:

No. 1, Ms. Weaver's not authorized to file the petition on behalf of the debtors under the provisions of the receivership order that exclusively vested with the receiver all the powers of corporate authority, including the authority to file a bankruptcy petition. Even if the receivership order didn't divest the board of authority, Ms. Weaver lacked authority because she's provided no evidence of corporate resolution;

No. 2, the petition was filed in bad faith; and

No. 3, alternatively, the receiver should be appointed

as a chapter 11 trustee. And I'll note for that I don't have authority to pick the chapter 11 trustee if one were to be appointed.

Everybody has consented that there is no factual issue as to the authority portion of these motions to dismiss, that it's a matter of my interpreting the receivership order and the law that applies.

Debtor's opposition is that it's not an issue of subject matter jurisdiction, first of all, and the debtors argue that there's controlling Sixth Circuit authority, notably citing to the 530 Donelson case, which is not controlling on this court. Nonetheless, I have reviewed that case and we'll go into it momentarily, along with the cases on which it relied, including the Sixth Circuit case from a hundred years ago, that would be controlling authority if it were on all fours. And the debtors also argue that even if the receivership order gave the receiver exclusive authority, that would raise federal preemption concerns.

So I will start with -- and I have not actually drafted a bench opinion. So pardon, please, my going back and forth between cases and documents and such, but this is going to be the bench opinion. And I'll enter an order that will not otherwise transcribe this bench opinion.

So first of all, subject matter jurisdiction is a threshold issue. "Corporate authority to file a bankruptcy

petition, while necessary, does not impact a bankruptcy court's subject-matter jurisdiction." In re The Phoenix Fund LLC, [No. 26-00712 (ESL), 2026 WL 693114, at *7 (Bankr. D.P.R. Mar. 11, 2026) (quoting Talon Diversified Holds. Inc. v. Forsythe (In re Parks Diversified, L.P.), Nos. 24-5516, 24-5517, 24-5911, 24-5918, 24-5920, 24-6314, 24-6638, 2026 WL 588285, at *10 (9th Cir. Mar. 3, 2026))], out of the District of Puerto Rico from March 11 of 2026, 2026 WL 693114.  And it's quoting In re Parks Diversified, L.P., which is from the Ninth circuit also this month, March 3rd of 2026, at 2026 WL 588285.

So the question then is does Price v. Gurney, 324 U.S. 100, from the Supreme Court (1945), provide a rule of subject matter jurisdiction when there's a lack of authority?  The Ninth Circuit, as I indicated, just ruled on March 3rd that it does not.  And here's a long quote from the Parks Diversified opinion, again 2026 WL 588285, at *7-8:

> "In Price, the Supreme Court expounded on the
> principle that 'the initiation of bankruptcy
> proceedings, like the run of corporate activities, is
> left to the corporation itself, that is, to those who
> have the power of management.'"

And that's quoting the Price case.

> "The Court held that the" -- the Supreme Court held
> that "The district court could not entertain Gurney's
> claims because if the district court determined that a

bankruptcy petition was filed without corporate authority, 'it had no alternative but to dismiss the petition.'

The Court couched its ruling in jurisdictional terms, using that language that Appellants repeatedly emphasize in their opening brief in the Ninth Circuit case. The Court stated that there was 'no basis of federal jurisdiction'" -- that's true. That is what Price v. Gurney said -- "and that 'under the Bankruptcy Act the power of the court to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims is strictly limited to those situations where a petition has been approved.' It further explained that 'nowhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation.' At bottom, the Court stated:

Any such enlargement of the jurisdiction of the bankruptcy court is for Congress. It has chosen to withhold from stockholders the right to institute

these bankruptcy proceedings. In the absence of federal incorporation, intracorporate disputes of the character presented here are, as we have said, governed by state law. The creation of a new basis of federal jurisdiction to hear them, pass on their merits, and adjudicate them is a legislative act. Now on its surface" -- again, I'm still quoting from the Ninth Circuit -- "this language may sound like the Price Court made a jurisdictional ruling. But there are at least two compelling reasons why the rule announced by the Supreme Court in Price should not be considered jurisdictional.

First, the more recent Supreme Court jurisprudence has walked back so-called 'jurisdictional' decisions like Price, and that jurisprudence cuts against the theory that Price is jurisdictional. 'Jurisdiction,' it has been observed, 'is a word of many, too many, meanings.'" [(quoting Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 90 (1998) (quoting United States v. Vanness, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)).]

And there's lots of quotations from Supreme Court cases. If this matter is transcribed, I will edit the transcript to include all of the proper citations.

"'Courts, including the Supreme Court have been less

than meticulous' in the use of that word. They've often referenced requirements as 'jurisdictional' when those requirements lack the potency of a rule of subject-matter jurisdiction and are more properly characterized as claims-processing rules or elements of causes of action. [Kontrick v. Ryan, 540 U.S. 443, 454 (2004); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 511 (2006) ("Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." (citation omitted)).]

Over the last four decades, the Court has consistently explained that many of its prior passing references to 'jurisdiction' do not, in fact, mean 'subject matter jurisdiction.' [See, e.g., Arbaugh, 546 U.S. at 511; Kontrick, 540 U.S. at 454; Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 161 (2010); Boechler, P.C. v. Comm'r., 596 U.S. 199, 203–04 (2022); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 395–97 (1982); Wilkins v. United States, 598 U.S. 152, 156–57 (2023); Steel Co., 523 U.S. at 90–91.] It has also more clearly articulated a standard for whether a rule

really is 'jurisdictional': it is 'jurisdictional only if Congress 'clearly states' that it is. [Boechler, 596 U.S. at 203 (quoting Arbaugh, 546 U.S. at 515).] Congress need not 'incant magic words,' but the 'traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.' [Id. (first quoting Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013); and then quoting United States v. Kwai Fun Wong, 575 U.S. 402, 410 (2015)).] The Supreme Court's Arbaugh case provides particularly helpful instruction here. There, the Court decided whether the requirement in a Title VII of the Civil Rights Act of 1964 that an employer have 'fifteen or more employees' to be an 'employer' under the statute, is a rule of subject-matter jurisdiction, or 'a substantive ingredient of a Title VII claim.' [Arbaugh, 546 U.S. at 503.] The Court in Arbaugh determined that the latter is correct. [Id. at 504.] Although federal-question jurisdiction requires that a case 'arise' under federal law (and Title VII doesn't apply if the employee-numerosity requirement is unsatisfied), [id. at 513 (quoting 28 U.S.C. § 1331),] the Court explained that 'nothing in the text of Title VII indicates that Congress intended courts, on their

own motion, to assure that the employee-numerosity requirement is met.'  [Id. at 514. . . .]  Second, other principles cut against the theory that Price is jurisdictional.  'Subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'  [Id. (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)).]  Treating the authority-to-file issue as jurisdictional is incompatible with that fundamental rule.  Under California law, for instance, 'an agency may be created, and an authority may be conferred, by a precedent authorization or a subsequent ratification.'  [Cal. Civ. Code § 2307 (emphasis added).]  And, in general, 'the effect of a ratification is that the authority which is given to the purported agent relates back to the time when he performed the act.'  [Rakestraw v. Rodrigues, 500 P.2d 1401, 1405 (Cal. 1972).]  If an unauthorized person filed a voluntary bankruptcy petition purportedly on behalf of a corporation, the corporation could ratify the filing, and the authority would be treated as having existed at the time of the filing.  But that effectively amounts to a waiver of the Price rule, which further evinces that the rule is not jurisdictional."

In In re Chicago South Loop Hotel Owner, LLC, No. 25-12829, 2026 WL 690868, at *1 n. 3 [(Bankr. N.D. Ill. Mar. 10, 2026),], the bankruptcy court for the Northern District of Illinois on March 10, 2026 noted:

"Several circuit courts have recently weighed in on whether a lack of authority to file impacts a bankruptcy court's subject matter jurisdiction. The Seventh Circuit has not addressed this issue, but others have." [See In re Parks Diversified, L.P., 2026 WL 588285 (9th Cir., March 3, 2026); New Haven Radio, Inc. v. Meister (In re Marin-Trigona), 760 F.2d 1334, 1340 (2nd Cir. 1985); Protopapas v. Brenntag AG (In re Whittaker Clark & Daniels Inc.) 152 F.4th 432, 443 (3rd Cir. 2025).]

And that case cites to In re Parks Diversified from the Ninth Circuit; New Haven Radio, Inc. v. Meister (In re Marin-Trigona), 760 F.2d 1334, 1340, from the Second Circuit 1985); and Protopapas v. Brenntag AG, which is In re Whittaker Clark & Daniels Inc., 152 F.4th 432, 443, from the Third Circuit, 2025.

"This court finds that it even if it does not have subject matter jurisdiction, it is not needed to enter an order dismissing this case under 11 U.S.C. Section 1112(b)(1)."

And I find the same.

Although the Sixth Circuit has not addressed -- that's

the end of the quote, by the way, from the Ninth Circuit case.

Although the Sixth circuit has not addressed the direct question, it has taken an approach similar to the approach of the Ninth Circuit by recognizing that "the Supreme Court has been rigorous and vigorous in distinguishing between requirements that go to the subject matter jurisdiction of the federal courts and requirements that are mandatory."  That's from Tennial v. REI Nation, LLC (In re Tennial), 978 F.3d 1022, 1025 [6th Cir. 2020).]  The court acknowledged Justice Ginsberg's "trailblazing unanimous decision for the Court that created a clear-statement rule for the daunting array of settings in which the question arises.  Congress must 'clearly state' that the requirement implicates the judiciary's subject matter jurisdiction – its 'statutory or constitutional power to adjudicate the case' – before the federal courts will treat the requirement as a nonwaivable and non-forfeitable jurisdictional imperative."  [Id.]  In Tennial, the Sixth Circuit applied that principle to disagree with other circuits on the issue of whether the 14-day appeal deadline in Bankruptcy Rule 8002 is jurisdictional, holding that it is not.

Based on the Sixth Circuit's decision in Tennial, the Ninth Circuit's decision in Parks Diversified, and the Third Circuit's decision in Whittaker Clark & Daniels Inc. (stating that "The statutes granting federal courts jurisdiction over bankruptcy cases do not attach jurisdictional significance to

the propriety of a debtor's petition."), the court finds that even if Ms. Weaver lacked authority to file the petitions, the court is not deprived of subject-matter jurisdiction.

Under Price, the court must look to state law to determine who has authority to file a bankruptcy petition. Such authority may be exercised by the individuals who have management control of a corporation. Tennessee Code Annotated Section 48-18-101 requires each corporation to have a board of directors, and "all corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, subject to any limitation set forth in the charter." Under Tennessee Code Annotated Section 48-238-101, the powers of an LLC are exercised by or under the authority of, and the business and affairs of the LLC shall be managed by or under the direction of, its members, if member-managed, or its board of governors, if board-managed.

Here the receivership order unequivocally divested Ms. Weaver of any authority, with a small exception that I'll reference in a moment, by exclusively vesting the receiver with

"(a) all the powers of officers, directors, members and/or managers as applicable of Uncle Nearest and the subject entities; to take (or refrain from taking) any and all actions on behalf of Uncle Nearest and the subject entities; and

(b) Each of Uncle Nearest and the subject entities' rights and powers to act on behalf of any other entity, (including as an officer, director, manager, equity holder), including, without limitation, each subject entity to direct such other entity to take (or refrain from taking) any action in furtherance of the terms under this order, in each case, until further order of the Court."

That paragraph unequivocally divests anyone except the receiver by exclusively vesting in the receiver all rights of governance of the receivership entities, which are debtors here.

Now paragraph 10(b) -- that was paragraph 9 of the receivership order. Paragraph 10(b) authorizes the receiver to direct the debtors and their officer and "each of their officers, directors, partners, managers, agents, servants, employees, representatives, attorneys, and all persons in active concert or participation with them who receive notice of this order by personal service or otherwise, to continue to manage all of the ordinary course operations of Uncle Nearest and the subject entities."

So that sentence allows the receiver to authorize, empower, and direct all of those people to continue to manage ordinary course operations. Clearly, the filing of the bankruptcy petition is not an ordinary course operation.

Furthermore, paragraph 10(b) goes on to say, "For the avoidance of any doubt, this means Fawn and Keith Weaver may continue to market Uncle Nearest products and manage the Uncle Nearest brand, subject to the receiver's supervision." The filing of a bankruptcy petition is not marketing the products or managing the brand, and even if it is, it's subject to the receiver's supervision.

Now to continue looking at the receivership order and its provisions concerning bankruptcy, that is found in paragraph 10(q) on page 12 of the order, and it says that, "The receiver is authorized to commence a proceeding under Title 11 of the United States Code on behalf of Uncle Nearest and the subject entities." If that provision were not in this receivership order, the receiver would not have been vested with the authority, arguably, to file a bankruptcy petition. Much like in a power of attorney, if the power of attorney does not reflect that the attorney-in-fact has the authority to file a bankruptcy petition, then there is no authority to file a bankruptcy petition under that document. And so here, this provision is simply indicating that the receiver is authorized. The receiver, who has the exclusive vesting of all powers of the, of the organizations, is also authorized to commence a proceeding under Title 11.

Now there is also injunctive language and language that in paragraph 10(d) that says, "The receiver shall retain

sole and exclusive possession of each of the assets." Putting a debtor in bank -- putting an entity in bankruptcy would obviously override that provision.

There's also this injunction in paragraph 11 that's pretty clear that you can't impair any assets, you can't obstruct or prevent in any way the receiver's actions under the order, which, by the way, filing a bankruptcy petition would be impairing the receiver's right to file a bankruptcy, or interfere in any other way with the receiver directly or indirectly.

So I want to address the cases and there are many of them, some of which you all didn't cite and many of which that you did. And so I want to -- this is, this is going to be, perhaps, not very articulate or artfully articulated, but I want to walk through these cases and explain why they govern my decision today, which will be to grant the motions to dismiss.

The first case, and this was cited by the receiver, is In re Licores, which is Licores -- it's a liquor store versus a court-appointed receiver. And this is 2013 WL 6834609. And this is a district court affirming the bankruptcy court, Central District of California, from December 20th of 2013. It was an appeal of the bankruptcy court's order that dismissed the bankruptcy case. There was a state court receiver appointed. And now I will say that in this case, the case expressly quotes not only language that gave the receiver the

authority to file a bankruptcy, but expressly divested, specifically, the power to file a bankruptcy from anyone else.

I read our receivership order here as akin to that because it exclusively vested in the receiver all corporate authority.  "The receivership order" -- I'm quoting from the Licores case -- "does not divest debtor from its power to seek bankruptcy protection," which is an issue raised by the debtors here in opposition to these motions.

"Rather, the order identifies who has the power to file the bankruptcy petition on behalf of the debtor. As the Supreme Court stated in Price:

'Nowhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation.'  [Price, 324 U.S. at 107.] Thus, the receivership order does not run contrary to Congress's right to enact uniform laws or bankruptcy or to change the application of bankruptcy laws to debtors."

[Id. at *6.]

As here, "The receivership order does not preclude debtor from availing itself of bankruptcy protection, but only

restricts who may file the petition on its behalf. If the receiver determines that it is in the best interest of debtor to file bankruptcy, receiver has the power to do so." [Id.]

That exactly, that statement exactly applies here. And I will also note that Ms. Weaver lacked authority under state law to file this bankruptcy petition, even if there wasn't a receiver because she can't do it on her own under Tennessee law.

The next case is Citizens & Northern Bank v. Pembrook Pines Mass Media[, N.A., Corp., No. 09-CV-6385-CJS, 2012 WL 1119755 (W.D.N.Y. Apr. 3, 2012).] This is from the Western District of New York, another district court decision, from April 3, 2012, 2012 WL 1119755. Now this one was a federal receivership order. And the court held that there was no authority, but says that the order doesn't deprive others. The order in this case, that, the Citizens & Northern Bank, case did not deprive others. It just gave the right to the receiver. And the rationale, what's, what's referenced here that I think is important is the appointing order restrained anyone but the receiver from filing a bankruptcy petition on behalf of the debtor. But that was a, this was an order from another jurisdiction that was never, if I'm not mistaken, this was never brought, then, to New York. And under New York State law, an ancillary receiver was never appointed.

In the case, Pembrook relied, in great part, on the

Sixth Circuit decision that is the foundation for 530 Donelson, which is In re Yaryan Naval Stores Company, 214 F. 563, from the Sixth Circuit, 1914. The Sixth Circuit there determined, and I'm quoting from the Citizen & Northern Bank case -- that "the terms of the injunction issued by the Federal District Court in Georgia did not prohibit the company from filing for bankruptcy." Notably, as the Bank pointed out in the Citizens & Northern Bank case, the rationale behind the decisions in many of the older cases relied on the Bankruptcy Code's conferral of the right to file on all persons and corporations and that, "Rights and privileges so positively bestowed cannot be destroyed, denied, or abridged by any power save that which created and brought them into being." [Citizens & N. Bank, 2012 WL 1119755, at *3 (quoting In re Yaryan Naval Stores, 214 F. at 565).] And that's a quote from In re Yaryan Naval Stores.

Here, the bankruptcy injunction does not prevent Pembrook from filing a, voluntary filing a petition in bankruptcy court. Instead, it gives the authority to make that decision to the receiver. And so what happened in the case was that the order confirming its authority to file a chapter 11 bankruptcy petition was denied. So there was a request for the court to confirm that there was authority in Pembrook Pines Mass Media and that was denied.

The next case, also cited by the receiver in its brief

is [Sino Clean Energy, Inc. v. Seiden (In re Sino Clean Energy, Inc.)], 901 F.3d 1139 [(9th Cir. 2018)], from the Ninth Circuit, of 2018. This was a state court receivership order and it replaced the board, just like this receivership order replaces the board by its terms of exclusively vesting in the receiver all of those rights. That's what, that's what this Ninth Circuit case held, that the state court order did the same thing. It replaced the board so that the debtor was still fully able to file for bankruptcy through valid filings made by its eligible board of directors, but not by this reconstituted board that didn't have authority.

The next case is one I already discussed concerning subject matter jurisdiction. It's the recent case out of Chicago from March 10th, In re Chicago South Loop Hotel Owner [2026 WL 690868] And I raise it again now because the court found that the state court receiver order did not identify a receiver before the petition was filed. And for that reason there was a problem, there was no problem with the petition having been filed.

In the case of [Adams v. Marvil (In re Bayou Grp., LLC), 564 F.3d 541 (2nd Cir. 2009)], there was a district court receivership order and the receiver filed the petition. The receiver was entitled to be the sole and exclusive managing member and representative of each of the receivership entities possessing without limitation the authority to petition for

protection under the bankruptcy court. And as the sole and exclusive managing member and representative, that receiver had the sole and exclusive power and authority to manage and direct the business and financial affairs, including the authority to file the bankruptcy petition. Here, Mr. Young is the sole and exclusive authority for these debtors and has the sole and exclusive authority to file a bankruptcy petition.

In the 530 Donelson [660 B.R. 887 (Bankr. M.D. Tenn. 2024)] case, I note -- 660 B.R. 887 from the Middle District of Tennessee Bankruptcy Court in 2024 -- this was filed by a member who was no longer in control after a receiver was appointed. It was filed, however, with the support of the receiver. And it was a state court receivership order and the request to dismiss the case was denied and the court made these particular statements concerning the receivership order there. The court order, the receivership order, stated:

"The receiver shall have all the powers of a court-appointed receiver that are described in Tennessee Code Annotated Section 29-41-12, all of which are incorporated by reference herein."

"It was more or less a plain vanilla receivership – with nothing that would alter the structure of the LLC, formally remove members, or deal with the possibility of bankruptcy."

Here, we have much more than a plain vanilla

receivership order.  We have a receivership order that did alter their structure by exclusively vesting Mr. Young with all of the powers which, by exclusively vesting him, then, effectively, divested the board and all of the members, the officers, the directors, of any of their authority.  And unlike 530 Donelson, which did not deal at all with the possibility of bankruptcy, this receivership order did.  Judge Mashburn said, "The general rule in the Sixth Circuit is that the appointment of a receiver and the issuance of the typical injunction against interference does not affect a company's, or by its extension, its managers' authority to file bankruptcy."  [In re 530 Donelson, 660 B.R. at 891.]  And he cited to the Sixth Circuit case from 1929, Struthers Furnace Company v. Grant, [30 F.2d 576 (6th Cir. 1929).], which I'll discuss in a moment.  He then went on to say:

> "'The pendency of a receivership does not ordinarily prevent the filing of a voluntary petition,' nor does the usual injunction against interference.  A company is 'not deprived of the right to file its petition merely because its property is in the custody of a state court receiver.'"  [(citations omitted).]

I agree with all of those statements, but that's not what we have here.

In Yaryan, which Judge Mashburn referred to here, he notes that:

"The order appointing the receivers there was in the 'usual form in such cases,' commanding company officers and agents to turn over property to the receivers and authorizing the receivers to continue the business and operate the plants in Georgia and Mississippi.  The order enjoined the company and its officers, agents, creditors, and other persons 'from interfering.'"  [In re 530 Donelson, 660 B.R. at 891 (quoting In re Yaryan Naval Stores Co., 214 F. at 563).]  The difference is the vesting and the exclusive vesting in particular.

Judge Mashburn then went on to quote from the Yaryan decision by the Sixth Circuit to say this particular sentence, "Nor, in the absence of specific declaration, will it be presumed that any court intends to make an order which must be ineffective because in direct conflict with the legislative will and mandate."  Here, there is not an absence of a specific declaration in our receivership order.

Continuing on, looking at the 530 Donelson case:

"Two principles," Judge Mashburn said, "can be drawn from the Yaryan case and the authority cited in that opinion.  First, if a court intends in a receivership order to deprive a company of the right to file bankruptcy, it must expressly state its intent to deviate from the general rule that a receivership will not affect bankruptcy rights.  In the words of Yaryan, there would need to be a 'specific declaration' to

that effect." [In re 530 Donelson, 660 B.R. at 892 (citation omitted).]

I find that the receivership order here included a specific declaration to that effect by exclusively vesting in the receiver all of the rights of the corporate formalities and organization in the LLC and providing that he also had the right, has the right to place these particular entities in a bankruptcy case.

"The second principle," Judge Mashburn said, "derived from the Sixth Circuit cases is that it is questionable whether any provision expressly prohibiting bankruptcy would be enforceable and not preempted by the Bankruptcy Code." [In re 530 Donelson, 660 B.R. at 892 (citation omitted).]

Again, not at issue here, because the receiver has the authority to put these debtors, currently debtors, the receivership entities, into a bankruptcy case. So there's no stripping of that right of the debtor. It's just saying who has the right. And that is the receiver.

Looking at the Yaryan case itself directly, 214 F. 563, from 1914 out of the Sixth Circuit, it was a federal receivership order, at least one of them was. But again, the language of the receivership order here is express. In that case, "it contained nothing which indicated an intention to prohibit a due application being made to the appropriate bankruptcy court or the exercise by the latter court of its

special jurisdiction and powers whenever the requisite statutory conditions might be found to exist."  [In re Yaryan Naval Stores, 214 F. at 565.]  Here, there was no one, there is no one except Mr. Young who has the authority to put this debtor in bankruptcy under Tennessee law or under the receivership order itself.

The other Sixth Circuit case is from 1929, Struthers Furnace Company v. Grant.  [30 F.3d 576 (6th Cir. 1929).]  It was a state court order, which I do think is important, and it appointed as receiver the appellee in the case.  A petition was filed under a resolution of the board of directors authorizing such action on the ground that the receiver had been unable to operate the business of the corporation profitably.  So in a way, akin to what we're hearing here, which is that Ms. Weaver is concerned about how the receiver is operating the business, or maybe not about how the receiver is operating the business, but about how the market is responding to the receiver's operating the business.  There was some language that the receiver contended was, that the broad language, which said under the then Bankruptcy Act, had to be "limited so as to exclude corporations instituting bankruptcy proceedings for the purpose of ending state court receiverships to which they had otherwise voluntarily submitted."  [Grant, 30 F.3d at 576.] But the court said no, the statute says what it says and the order in the case did not adequately exclude anyone else from

filing a bankruptcy petition. The receiver, who was the appellee in the Grant case says that, he said that, "The filing of the bankruptcy petition was part of a scheme to escape the state court receiver's vigorous assertion of the corporate chose in action against the president of the company. This is neither explicitly stated nor inferable from the stipulated facts," the court said, Sixth Circuit said. [Grant, 30 F.3d at 576] "The only proper inference therefrom is that of an endeavor to supplant control of the state court by that of the federal court." Here though, again, we have a federal court receivership order that very clearly divests any authority for anyone except the receiver to file a bankruptcy petition.

Another case is Jordan v. Independent Energy Corporation. [446 F. Supp. 516 (N.D. Tex. 1978)] This is from the District Court of the Northern District of Texas, 1978, 446 F. Supp. 516. This Court acknowledges that cases about state court receivership orders are generally not applicable to federal court receivership orders. It says, "The federal court also can, though, enjoin a bankruptcy petition by a blanket injunction." [Jordan, 446 F. Supp. at 529 ("In the absence of Congressional guidance to the contrary, a federal district court may theoretically restrain voluntary or involuntary access to the bankruptcy court by issuing a blanket receivership injunction.).] That's not the case here. What we have here is authority for the receiver to file a bankruptcy

case and no authority for anyone else to do anything except ordinary course operations.

Another case is <u>Roxwell Performance Drilling, LLC</u> [No. 13-50301-RLJ-11, 2013 WL 6799118 (Bankr. N.D. Tex. Dec. 20, 2013)] from the bankruptcy court for the Northern District of Texas, December 20th of 2013, 2013 WL 6799118. The question that was before the court was whether the receiver had authority to file a chapter 11 petition and the receiver was found to have authority. There is discussion in here about the 543 turnover, which is how I discovered that that was an issue, frankly. But, the bankruptcy court authorized, found that there was authority for the receiver because of the receivership order to file the bankruptcy. And it cites to the <u>Bayou</u> case that I previously noted and how the receiver's authority there to manage the bankruptcy proceedings stems not from his position as a federal equity receiver, but from the language in the receivership order that specifically appointed him as Bayou's sole and exclusive managing member, thereby vesting him with the authority to file and manage the bankruptcy proceedings. Here, again, the exclusive vesting of all of those rights in Mr. Young divested everyone else and it gives him the right and him the right only to file the bankruptcy case.

The debtors cited to <u>In re Stewart</u> [No. 24-32471, 2025 WL 715494 (Bankr. N.D. Ohio Mar. 5, 2025)], a recent case out

46

of the bankruptcy court for the Northern District of Ohio, 2025 WL 715494, March 5th of 2025, in which Judge Gustafson found that the state court divorce decree that barred a bankruptcy filing by either of the spouses was ineffective. It's completely inapposite to this case.

And then we have the Whittaker Clark & Daniels case from the Third Circuit. [Whittaker Clark & Daniels Inc. v. Brenntag AG (In re Whittaker Clark & Daniels Inc.), 152 F.4th 432 (3rd Cir. 2025).] Again, that has to do with, the subject is not subject matter jurisdiction, but in that case there was a state court receivership. This is the one where there was no ancillary bringing that state court receivership order from South Carolina to New Jersey where the entity was incorporated and that was never done. And so the court found that because the state court receivership order was never brought to New Jersey in ancillary proceedings, the board was not replaced so that the board could still file the petition, again distinguishable from here.

And then finally, Lexington Hospitality Group, LLC, 577 B.R. 676 [(Bankr. E.D. Ky. 2017).], out of the bankruptcy court for the Eastern District of Kentucky, 2017. And this was having to do with an amended operating agreement and whether a managing member who was still a manager when the petition was filed had authority to file a bankruptcy petition on the LLC's behalf. And he did because he was not divested, which meant he

continued to have authority. Again here, everyone except Mr. Young was divested of authority.

And I don't think it's necessary for that order -- I think what the debtor would argue is that Judge Atchley should have said in the order in paragraph 10(q), that he should have said the receiver is exclusively authorized to commence a proceeding. I don't think it's necessary to use the word "exclusively" there because he's already exclusively vested Mr. Young with all of the powers of operating the business except in the ordinary course. And even then, only in coordination and under his supervision can other entities or people act on behalf of the debtors.

For those reasons, I find that the receivership order provides the sole authority to Mr. Young. I find that Ms. Weaver did not have authority, as she was divested of any authority except ordinary course marketing and managing the brand. And for those reasons, I find that there is cause for dismissal because there is a lack of authority for the petitions as they were filed.

I will not ask the court reporter to transcribe my opinion. If it is transcribed at the request of any party, I reserve the right to make any edits -- and there will be a lot of them -- as to format, style, grammar, or citation, in addition to the rights under Federal Rule of Bankruptcy Procedure 9024, which makes Federal Rule of Civil Procedure

60(a) applicable in bankruptcy proceedings.

And an Order of Dismissal will be entered shortly.

Is there anything else I need to handle in these cases today?

MR. TARPY:  No, your Honor.

MR. CAMPBELL:  No, your Honor.

THE COURT:  All right.  Thank you all.

MS. LIGGINS:  Thank you, your Honor.

MR. CAMPBELL:  Thank you.

THE COURT:  That moots everything else that was before the Court today that I did not already grant.

Safe travels.

(Proceedings concluded at 11:18 a.m.)

CERTIFICATE

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Janice Russell*    March 25, 2026

Janice Russell, Transcriber    Date